**BOILERMAKERS LOCAL 154 RETIREMENT FUND and Key West Police & Fire Pension Fund, Plaintiffs,**

v.

**CHEVRON CORPORATION, Samuel H. Armacost, Linnet F. Deily, Robert E. Denham, Robert J. Eaton, Chuck Hagel, Enrique Hernandez, Jr., Franklyn G. Jenifer, George L. Kirkland, Sam Nunn, Donald B. Rice, Kevin W. Sharer, Charles R. Shoemate, John G. Stumpf, Ronald D. Sugar, Carl Ware, and John S. Watson, Defendants.**

**IClub Investment Partnership, Plaintiff,**

v.

**FedEx Corporation, James L. Barksdale, John A. Edwardson, J.R. Hyde, III, Shirley A. Jackson, Steven R. Loranger, Gary W. Loveman, Susan C. Schwab, Frederick W. Smith, Joshua I. Smith, David P. Steiner, and Paul S. Walsh, Defendants.**

Civil Action Nos. 7220–CS, 7238–CS.

Court of Chancery of Delaware.

Submitted: April 12, 2013.
Decided: June 25, 2013.

Michael Hanrahan, Esquire, Paul A. Fioravanti, Jr., Esquire, Tanya E. Pino, Esquire, Kevin H. Davenport, Esquire, Prickett, Jones & Elliott, P.A., Wilmington, Delaware; Marc A. Topaz, Esquire, Lee D. Rudy, Esquire, Eric L. Zagar, Esquire, Michael C. Wagner, Esquire, James H. Miller, Esquire, Kessler Topaz Meltzer & Check, LLP, Radnor, Pennsylvania; Robert D. Klausner, Esquire, Stuart A. Kaufman, Esquire, Klausner, Kaufman, Jensen & Levinson, Plantation, Florida, Attorneys for Plaintiffs Boilermakers Local 154 Retirement Fund, Key West Police & Fire Pension Fund, and IClub Investment Partnership.

William B. Chandler III, Esquire, Tamika R. Montgomery, Esquire, Ryan A. McLeod, Esquire, Ian R. Liston, Esquire, Wilson Sonsini Goodrich & Rosati, P.C., Georgetown, Delaware; David J. Berger, Esquire, Wilson Sonsini Goodrich & Rosati, P.C., Palo Alto, California, Attorneys for Defendants Chevron Corporation, Samuel H. Armacost, Linnet F. Deily, Robert E. Denham, Robert J. Eaton, Chuck Hagel, Enrique Hernandez, Jr., Franklyn G. Jenifer, George L. Kirkland, Sam Nunn, Donald B. Rice, Kevin W. Sharer, Charles B. Shoemate, John G. Stumpf, Ronald D. Sugar, Carl Ware, and John S. Watson.

A. Gilchrist Sparks, III, Esquire, Kenneth J. Nachbar, Esquire, Bradley D. Sorrels, Esquire, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware, Attorneys for Defendants FedEx Corporation, James L. Barksdale, John A. Edwardson, J.R. Hyde, III, Shirley A. Jackson, Steven R. Loranger, Gary W. Loveman, Susan C. Schwab, Frederick W. Smith, Joshua I. Smith, David P. Steiner, and Paul S. Walsh.

## OPINION

STRINE, Chancellor.

### I.  *Introduction*

The board of Chevron, the oil and gas major, has adopted a bylaw providing that litigation relating to Chevron's internal affairs should be conducted in Delaware, the state where Chevron is incorporated and whose substantive law Chevron's stockholders know governs the corporation's internal affairs. The board of the logistics company FedEx, which is also incorporated in Delaware and whose internal affairs are also therefore governed by Delaware law, has adopted a similar bylaw providing that the forum for litigation related to FedEx's internal affairs should be the Delaware Court of Chancery. The boards of both companies have been empowered in their certificates of incorporation to adopt bylaws under 8 *Del. C.* § 109(a).[1]

---

1. 8 *Del. C.* § 109(a) ("[A]ny corporation may, in its certificate of incorporation, confer the power to adopt, amend or repeal bylaws upon the directors....").

The plaintiffs, stockholders in Chevron and FedEx, have sued the boards for adopting these "forum selection bylaws." The plaintiffs' complaints are nearly identical and were filed only a few days apart by clients of the same law firm. In Count I, the plaintiffs claim that the bylaws are statutorily invalid because they are beyond the board's authority under the Delaware General Corporation Law ("DGCL"). In Count IV, the plaintiffs allege that the bylaws are contractually invalid, and therefore cannot be enforced like other contractual forum selection clauses under the test adopted by the Supreme Court of the United States in *The Bremen v. Zapata Off-Shore Co.*,[2] because they were unilaterally adopted by the Chevron and FedEx boards using their power to make bylaws. The plaintiffs have attempted to prove their point by presenting to this court a number of hypothetical situations in which, they claim, the bylaws might operate inconsistently with law or unreasonably. The plaintiffs have also claimed that the boards of Chevron and FedEx breached their fiduciary duties in adopting the bylaws.

In this opinion, the court resolves the defendants' motion for judgment on the pleadings on the counts relating to the statutory and contractual validity of the bylaws. Because the two bylaws are similar, present common legal issues, and are the target of near-identical complaints, the court decided to address them together. This is efficient, and is also in the interests of the parties, because a decision on the legal validity of the bylaws under the DGCL will moot the plaintiffs' other challenges if the bylaws are found to be invalid. And, it also aids the administration of justice, because a foreign court that respects the internal affairs doctrine, as it must,[3] when faced with a motion to enforce the bylaws will consider, as a first order issue, whether the bylaws are valid under the "chartering jurisdiction's domestic law."[4] Furthermore, the plaintiffs' facial statutory invalidity claim and their related contention that, as a matter of law, the bylaws are not contractually enforceable, have cast a cloud over the defendants' bylaws and those of other corporations. A decision as to the basic legal questions presented by the plaintiffs' complaints will provide efficiency benefits to not only the defendants and their stockholders, but to other corporations and their investors.

For these reasons, the court consolidated the Chevron and FedEx cases to address the purely facial legal challenges to

---

**2.** *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

**3.** *See CTS Corp. v. Dynamics Corp.*, 481 U.S. 69, 90, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987) ("[A] corporation—except in the rarest situations—is organized under, and governed by, the law of a single jurisdiction, traditionally the corporate law of the State of its incorporation."); *Edgar v. MITE Corp.*, 457 U.S. 624, 645, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982) ("The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting de-

mands." (citation omitted)); *see also Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 92, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) (holding that in a derivative suit "the scope of the demand requirement embodies the incorporating State's allocation of governing powers within the corporation"); *Burks v. Lasker*, 441 U.S. 471, 478, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979) ("[T]he first place one must look to determine the powers of corporate directors is in the relevant State's corporation law." (citations omitted)).

**4.** Joseph A. Grundfest & Kristen A. Savelle, *The Brouhaha over Intra–Corporate Forum Selection Provisions: A Legal, Economic, and Political Analysis*, 68 Bus. Law. 325, 330 (2013) [hereinafter Grundfest & Savelle, *Forum Selection Provisions* ].

the statutory and contractual validity of the bylaws raised by Counts I and IV of the plaintiffs' complaints. The defendants filed a motion for judgment on the pleadings, seeking a dismissal of Counts I and IV, and this is the motion before the court today.

After considering the parties' contending arguments on Count I of the complaints, the court finds that the bylaws are valid under our statutory law. 8 *Del. C.* § 109(b) provides that the bylaws of a corporation "may contain any provision, not inconsistent with law or with the certificate of incorporation, relating to the business of the corporation, the conduct of its affairs, and its rights or powers or the rights or powers of its stockholders, directors, officers or employees." The forum selection bylaws, which govern disputes related to the "internal affairs" of the corporations, easily meet these requirements.[5] The bylaws regulate the forum in which stockholders may bring suit, either directly or on behalf of the corporation in a derivative suit, to obtain redress for breaches of fiduciary duty by the board of directors and officers. The bylaws also regulate the forum in which stockholders may bring claims arising under the DGCL or other internal affairs claims. In other words, the bylaws only regulate suits brought by stockholders as stockholders in cases governed by the internal affairs doctrine. Thus, the bylaws, by establishing these procedural rules for the operation of the corporation, plainly relate to the "business of the corporation[s]," the "conduct of [their] affairs," and regulate the "rights or powers of [their] stockholders." Because Delaware law, like federal law, respects and enforces forum selection clauses, the forum selection bylaws are also not inconsistent with the law.[6] For these reasons, the forum selection bylaws are not facially invalid as a matter of statutory law.

■ As to Count IV of the complaints, the court finds that the bylaws are valid and enforceable contractual forum selection clauses. As our Supreme Court has made clear, the bylaws of a Delaware corporation constitute part of a binding broader contract among the directors, officers, and stockholders formed within the statutory framework of the DGCL.[7] This contract is, by design, flexible and subject to change in the manner that the DGCL spells out and that investors know about when they purchase stock in a Delaware corporation. The DGCL allows the corporation, through the certificate of incorporation, to grant the directors the power to adopt and amend the bylaws unilaterally.[8]

The certificates of incorporation of Chevron and FedEx authorize their boards to amend the bylaws. Thus, when investors bought stock in Chevron and FedEx, they knew (i) that consistent with 8 *Del. C.* § 109(a), the certificates of incorporation gave the boards the power to adopt and amend bylaws unilaterally; (ii) that 8 *Del. C.* § 109(b) allows bylaws to regulate the business of the corporation, the conduct of its affairs, and the rights or powers of its stockholders; and (iii) that board-adopted

---

5. *See Edgar,* 457 U.S. at 645, 102 S.Ct. 2629; *VantagePoint Venture P'rs 1996 v. Examen, Inc.,* 871 A.2d 1108, 1113 (Del.2005).

6. *See* 8 *Del. C.* § 109(b) ("The bylaws may contain any provision, not inconsistent with law...."); *Ingres Corp. v. CA, Inc.,* 8 A.3d 1143 (Del.2010) (holding that forum selection clauses are presumptively valid and enforceable under Delaware law).

7. For two cases making this clear, eighty years apart, see *Airgas, Inc. v. Air Products & Chemicals, Inc.,* 8 A.3d 1182, 1188 (Del.2010), and *Lawson v. Household Finance Corp.,* 152 A. 723, 726 (Del.1930).

8. 8 *Del. C.* § 109(a).

bylaws are binding on the stockholders. In other words, an essential part of the contract stockholders assent to when they buy stock in Chevron and FedEx is one that presupposes the board's authority to adopt binding bylaws consistent with 8 *Del. C.* § 109. For that reason, our Supreme Court has long noted that bylaws, together with the certificate of incorporation and the broader DGCL, form part of a flexible contract between corporations and stockholders, in the sense that the certificate of incorporation may authorize the board to amend the bylaws' terms and that stockholders who invest in such corporations assent to be bound by board-adopted bylaws when they buy stock in those corporations.[9]

■ The plaintiffs' argument to the contrary—that stockholders' rights may not be regulated by board-adopted bylaws—misunderstands the relationship between the corporation and stockholders established by the DGCL, and attempts to revive the outdated "vested rights" doctrine. As cases like *Kidsco Inc. v. Dinsmore* show, that doctrine is inconsistent with the fundamental structure of Delaware's corporate law.[10] Thus, a forum selection clause adopted by a board with the authority to adopt bylaws is valid and enforceable under Delaware law to the same extent as other contractual forum selection clauses. Therefore, this court will enforce the forum selection bylaws in the same way it enforces any other forum selection clause, in accordance with the principles set down by the United States Supreme Court in *Bremen*[11] and adopted explicitly by our Supreme Court in *Ingres Corp. v. CA, Inc.*[12]

In an attempt to defeat the defendants' motion, the plaintiffs have conjured up an array of purely hypothetical situations in which they say that the bylaws of Chevron and FedEx might operate unreasonably. As the court explains, it would be imprudent and inappropriate to address these hypotheticals in the absence of a genuine controversy with concrete facts. Delaware courts "typically decline to decide issues that may not have to be decided or that create hypothetical harm."[13] Under the settled authority of cases such as *Frantz Manufacturing Co. v. EAC Industries*[14] and *Stroud v. Grace*,[15] there is a presumption that bylaws are valid. By challenging the facial statutory and contractual validity of the forum selection bylaws, the plaintiffs took on the stringent task of showing that the bylaws cannot operate validly in any conceivable circumstance.[16] The plaintiffs cannot evade this burden by conjuring up imagined future situations where the bylaws might operate unreasonably, especially when they acknowledge that in most internal affairs cases the bylaws will not operate in an unreasonable manner.[17]

9. See, e.g., Centaur P'rs, IV v. Nat'l Intergp., Inc., 582 A.2d 923, 928 (Del.1990).

10. 674 A.2d 483 (Del.Ch.1995).

11. The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

12. 8 A.3d 1143 (Del.2010).

13. 3 Stephen A. Radin, The Business Judgment Rule: Fiduciary Duties of Corporate Officers 3498 (6th ed. 2009) (discussing suits over bylaws).

14. 501 A.2d 401, 407 (Del.1985).

15. 606 A.2d 75, 96 (Del.1992) (citing STAAR Surgical Co. v. Waggoner, 588 A.2d 1130, 1137 n. 2 (Del.1991); Ala. By–Prods. Corp. v. Neal, 588 A.2d 255, 258 n. 1 (Del.1991)).

16. E.g., Frantz, 501 A.2d at 407.

17. Tr. of Oral Arg. 64:13–65:6.

Nor does the adherence to the accepted standard of review in addressing facial invalidity claims work any unfairness. Under *Bremen* and its progeny, like our Supreme Court's recent *Carlyle* decision,[18] as-applied challenges to the reasonableness of a forum selection clause should be made by a real plaintiff whose real case is affected by the operation of the forum selection clause. If a plaintiff faces a motion to dismiss because it filed outside the forum identified in the forum selection clause, the plaintiff can argue under *Bremen* that enforcing the clause in the circumstances of that case would be unreasonable. In addition, if a plaintiff-stockholder believes that a board is breaching its fiduciary duties by applying a forum selection clause to obtain dismissal of an actual case filed outside the forum designated by the bylaws, it may sue at that time. But the plaintiffs here, who have no separate claims pending that are affected by the bylaws, may not avoid their obligation to show that the bylaws are invalid in all circumstances by imagining circumstances in which the bylaws might not operate in a situationally reasonable manner. Such circumstantial challenges are required to be made based on real-world circumstances by real parties, and are not a proper basis for the survival of the plaintiffs' claims that the bylaws are facially invalid under the DGCL.

Therefore, the defendants' motion for judgment on the pleadings on Counts I and IV is granted.

## II. *Background And Procedural Posture*

### A. *The Chevron And FedEx Forum Selection Bylaws*

Critical to the resolution of this motion is an understanding of who has the power to adopt, amend, and repeal the bylaws, and what subjects the bylaws may address

under the DGCL. 8 *Del. C.* § 109(a) identifies who has the power to adopt, amend, and repeal the bylaws:

> [T]he power to adopt, amend or repeal bylaws shall be in the stockholders entitled to vote.... Notwithstanding the foregoing, any corporation may, in its certificate of incorporation, confer the power to adopt, amend or repeal bylaws upon the directors.... The fact that such power has been so conferred upon the directors ... shall not divest the stockholders ... of the power, nor limit their power to adopt, amend or repeal bylaws.

8 *Del. C.* § 109(b) states the subject matter the bylaws may address:

> The bylaws may contain any provision, not inconsistent with law or with the certificate of incorporation, relating to the business of the corporation, the conduct of its affairs, and its rights or powers or the rights or powers of its stockholders, directors, officers or employees.

Both Chevron's and FedEx's certificates of incorporation conferred on the boards the power to adopt bylaws under 8 *Del. C.* § 109(a). Thus, all investors who bought stock in the corporations whose forum selection bylaws are at stake knew that (i) the DGCL allows for bylaws to address the subjects identified in 8 *Del. C.* § 109(b), (ii) the DGCL permits the certificate of incorporation to contain a provision allowing directors to adopt bylaws unilaterally, and (iii) the certificates of incorporation of Chevron and FedEx contained a provision conferring this power on the boards.

Acting consistent with the power conferred to the board in Chevron's certificate of incorporation, the board amended the bylaws and adopted a forum selection bylaw. Generally speaking, a forum selec-

---

**18.** *Nat'l Indus. Gp. (Hldg.) v. Carlyle Inv.* *Mgmt. L.L.C.,* 67 A.3d 373 (Del.2013).

tion bylaw is a provision in a corporation's bylaws that designates a forum as the exclusive venue for certain stockholder suits against the corporation, either as an actual or nominal defendant, and its directors and employees. On September 29, 2010, the board of Chevron, a Delaware corporation headquartered in California, adopted a forum selection bylaw that provided:

> Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of a fiduciary duty owed by any director, officer or other employee of the Corporation to the Corporation or the Corporation's stockholders, (iii) any action asserting a claim arising pursuant to any provision of the Delaware General Corporation Law, or (iv) any action asserting a claim governed by the internal affairs doctrine. Any person or entity purchasing or otherwise acquiring any interest in shares of capital stock of the Corporation shall be deemed to have notice of and consented to the provisions of this [bylaw].[19]

Several months later, on March 14, 2011, the board of FedEx, a Delaware corporation headquartered in Tennessee, adopted a forum selection bylaw identical to Chevron's.[20] Like Chevron, FedEx's board had been authorized by the certificate of incorporation to adopt bylaws without a stockholder vote, and the FedEx board adopted the bylaw unilaterally.

Chevron's board amended its bylaw on March 28, 2012 to provide that suits could be filed in any state or federal court in Delaware with jurisdiction over the subject matter and the parties. The amended bylaw also provides that the bylaw would not apply unless the court in Delaware had personal jurisdiction over all the parties that were "indispensable" to the action.[21] The amended bylaw, with the changes in italics, states:

> Unless the Corporation consents in writing to the selection of an alternative forum, the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of a fiduciary duty owed by any director, officer or other employee of the Corporation to the Corporation or the Corporation's stockholders, (iii) any action asserting a claim arising pursuant to any provision of the Delaware General Corporation Law, or (iv) any action asserting a claim governed by the internal affairs doctrine shall *be a state or federal court located within the state of Delaware, in all cases subject to the court's having personal jurisdiction over the indispensible parties named as defendants.* Any person or entity purchasing or otherwise acquiring any interest in shares of capital stock of the Corporation shall be deemed to have notice of and consented to the provisions of this [bylaw].[22]

In their briefing, the boards of Chevron and FedEx state that the forum selection bylaws are intended to cover four types of suit, all relating to internal corporate governance:

---

19. Chevron Compl. ¶ 21.

20. FedEx Compl. ¶ 20.

21. Pls.' Revised Supplement to Compl. ¶¶ 1–2 [hereinafter "Chevron Supp."] (quoting Chev-

ron Corp., Current Report (Form 8–K) (Mar. 28, 2012)).

22. *Id.*

- *Derivative suits.* The issue of whether a derivative plaintiff is qualified to sue on behalf of the corporation and whether that derivative plaintiff has or is excused from making demand on the board is a matter of corporate governance, because it goes to the very nature of who may speak for the corporation.

- *Fiduciary duty suits.* The law of fiduciary duties regulates the relationships between directors, officers, the corporation, and its stockholders.

- *D.G.C.L. suits.* The Delaware General Corporation Law provides the underpinning framework for all Delaware corporations. That statute goes to the core of how such corporations are governed.

- *Internal affairs suits.* As the U.S. Supreme Court has explained, "internal affairs," in the context of corporate law, are those "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." [23]

That is, the description of the forum selection bylaws by the Chevron and FedEx boards is consistent with what the plain language of the bylaws suggests: that these bylaws are not intended to regulate *what* suits may be brought against the corporations, only *where* internal governance suits may be brought. [24]

**B.** *The Defendant Boards Have Identified Multiforum Litigation Over Single Corporate Transactions Or Decisions As The Reason Why They Adopted The Bylaws*

The Chevron and FedEx boards say that they have adopted forum selection bylaws in response to corporations being subject to litigation over a single transaction or a board decision in more than one forum simultaneously, so-called "multiforum litigation." [25] The defendants' opening brief argues that the boards adopted the forum selection bylaws to address what they perceive to be the inefficient costs of defending against the same claim in multiple courts at one time. [26] The brief describes how, for jurisdictional purposes, a corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business. [27] Because a corporation need not be, and frequently is not, headquartered in the state where it is incorporated, a corporation may be subject to personal jurisdiction as a defendant in a suit involving corporate governance matters in two states. [28] Therefore, any act that the corporation or its directors undertake is potentially subject to litigation in at least two states. [29] Furthermore, both state and federal courts may have jurisdiction over the claims against the corporation. The result is that any act that the corporation or its directors undertake may be challenged in various forums within those states simultaneously. [30] The boards of Chevron and Fe-

---

23. Defs.' Opening Br. 30–31 (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 645, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982)) (other citations omitted).

24. *See also* Grundfest & Savelle, *Forum Selection Provisions*, at 370–73.

25. Defs.' Opening Br. at 6–9.

26. *Id.* at 9–22.

27. *Id.; see also* 28 U.S.C. § 1332(c)(1) (defining corporate citizenship for the purposes of federal diversity jurisdiction).

28. Defs.' Opening Br. 6–9.

29. *Id.*

30. *Id.*

dEx argue that multiforum litigation, when it is brought by dispersed stockholders in different forums, directly or derivatively, to challenge a single corporate action, imposes high costs on the corporations and hurts investors by causing needless costs that are ultimately born by stockholders, and that these costs are not justified by rational benefits for stockholders from multiforum filings.[31]

Thus, the boards of Chevron and FedEx claim to have tried to minimize or eliminate the risk of what they view as wasteful duplicative litigation by adopting the forum selection bylaws.[32] Chevron and FedEx are not the only boards to have recently unilaterally adopted these clauses: in the last three years, over 250 publicly traded corporations have adopted such provisions.[33]

As the court next explains, neither the wisdom of the Chevron and FedEx boards in adopting the forum selection bylaws to address the prevalence of multiforum litigation, or in proceeding by way of a bylaw, rather than proposing an amendment to the certificate of incorporation, are proper matters for this court to address. Those questions are not relevant on this motion.[34]

### C. The Plaintiffs Challenge The Forum Selection Bylaws

Within the course of three weeks in February 2012, a dozen complaints were filed in this court against Delaware corporations, including Chevron and FedEx, whose boards had adopted forum selection bylaws without stockholder votes.[35] As a threshold issue, these complaints, which were all substantively identical and filed by clients of the same accomplished law

---

**31.** *Id.* at 9–22 (citing Frederick H. Alexander & Daniel D. Matthews, *The Multi–Jurisdictional Stockholder Litigation Problem and the Forum Selection Solution,* 26 Corporate Counsel Weekly 19 (May 11, 2011); Grundfest & Savelle, *Forum Selection Provisions;* Edward B. Micheletti & Jenness E. Parker, *Multi–Jurisdictional Litigation: Who Caused This Problem, and Can It Be Fixed?,* 37 Del. J. Corp. L. 1 (2012); Mark Lebovitch et al., *Chaos: A Proposal To Improve Organization and Coordination in Multi–Jurisdictional Merger–Related Litigation* (Dec. 1, 2011), http://www.blbglaw.com/misc_files/Making OrderoutofChaos).

**32.** Defs.' Opening Br. 9 ("The detriments of multi-jurisdictional duplicative litigation are significant.").

**33.** *Id.* at 21 (citing Grundfest & Savelle, *Forum Selection Provisions,* at 326).

**34.** *Cf. CA, Inc. v. AFSCME Emps. Pension Plan,* 953 A.2d 227, 240 (Del.2008) ("[W]e express no view on whether the [b]ylaw as currently drafted, would create a better governance scheme from a policy standpoint.").

**35.** *Boilermakers Local 154 Ret. Fund v. Priceline.com, Inc.,* C.A. No. 7216–CS (Del. Ch. Feb. 6, 2012); *Boilermakers Local 154 Ret. Fund v. Danaher Corp.,* C.A. No. 7218–CS (Del. Ch. Feb. 6, 2012); *Boilermakers Local 154 Ret. Fund v. CurtissWright Corp.,* C.A. No. 7219–CS (Del. Ch. Feb. 6, 2012); *Boilermakers Local 154 Ret. Fund v. Chevron Corp.,* C.A. No. 7220–CS (Del. Ch. Feb. 6, 2012); *Sutton v. AutoNation, Inc.,* C.A. No. 7221–CS (Del. Ch. Feb. 6, 2012); *Singh v. Navistar Int'l Corp.,* C.A. No. 7222–CS (Del. Ch. Feb. 6, 2012); *Stead v. Franklin Res., Inc.,* C.A. No. 7223–CS (Del. Ch. Feb. 7, 2012); *City of Sunrise Gen. Emps.' Pension Plan v. Super. Energy Servs.,* Inc., C.A. No. 7224–CS (Del. Ch. Feb. 7, 2012); *Laborers' Local No. 1174 Pension Fund v. SPX Corp.,* C.A. No. 7225–CS (Del. Ch. Feb. 7, 2012); *IClub Inv. P'ship v. FedEx Corp.,* C.A. No. 7238–CS (Del. Ch. Feb. 13, 2012); *Neighbors v. Air Prods. & Chems., Inc.,* C.A. No. 7240–CS (Del.Ch. Feb. 13, 2012); *Schellman v. Jack in the Box, Inc.,* C.A. No. 7274–CS (Del. Ch. Feb. 23, 2012).

A separate derivative complaint against the board of directors of Chevron, relating to the board's enactment of the forum selection bylaw, was filed in the United States District Court for the Northern District of California on March 30, 2012. That action was stayed in favor of this Delaware litigation. *Bushansky v. Armacost,* 2012 WL 3276937 (N.D.Cal. Aug. 9, 2012).

firm, alleged that the boards of the defendant corporations had no authority to adopt the bylaws, and sought a declaration that the bylaws were invalid and a breach of fiduciary duty. The complaints also brought a salmagundi of other claims, alleging hypothetical ways in which the forum selection bylaws could potentially be enforced in an unreasonable and unfair manner, and accusing the directors of breaching their fiduciary duties by adopting them.

Ten of the twelve defendant corporations repealed their bylaws, and the complaints against them were dismissed. Chevron and FedEx did not repeal their bylaws and answered the plaintiffs' complaints. The defendants then asked the court to hear a consolidated action on the facial validity of the forum selection bylaws, not only because the plaintiffs' lawsuits were chilling the adoption of such bylaws under the DGCL, but, most importantly, because the "fundamental question[s]" of statutory validity and contractual enforceability were "ripe for adjudication now[.]" [36] The plaintiffs wrote in response that they objected to the defendants' "attempt to truncate discovery and abruptly seek an advisory opinion on the theoretical permissibility of the director-adopted exclusive forum bylaws." [37]

Shortly after the receipt of those letters, the court held an office conference on how the case should proceed. The defendant corporations argued that the statutory validity and contractual enforceability of their forum selection bylaws—as challenged by Counts I and IV—were important legal questions that could be addressed by dealing with these counts on

motion practice now. The defendants believed that an adjudication of those purely legal issues would benefit the stockholders of Delaware corporations, because the statutory validity and contractual enforceability of the companies' bylaws in actual, real-world situations involving their effect on substantive internal affairs litigation had been clouded by the present case. On the other hand, the plaintiffs' other counts, which involve their fiduciary duty claims and arguments about the ways in which the forum selection clauses could be inequitably adopted or applied in particular situations, could be determined after the core questions of facial statutory validity and contractual enforceability had been resolved. The defendants pointed out that, if they lose, the legal issues are settled against them, and if the bylaws are invalid, then the plaintiffs' other as-applied claims are moot. But, if the bylaws are statutorily and contractually valid and enforceable as a facial matter, then there would be a more concrete legal context for consideration of whether the plaintiffs' fiduciary duty and as-applied claims are meritorious or even, on account of the purely hypothetical nature of the latter arguments, justiciable.

The plaintiffs resisted this approach, arguing that their facial challenges in Counts I and IV should not be resolved until discovery was completed on all their other claims. But, because Chevron and FedEx had made persuasive arguments that addressing the facial challenges to the bylaws would avoid unnecessary costs or delay, especially given the doubt the plaintiffs themselves created about a corporation's statutory power to adopt forum selection bylaws at all,[38] the court consoli-

---

**36.** Letter to the Ct. from Counsel for Defs. (Oct. 9, 2012).

**37.** Letter to the Ct. from Counsel for Pls. (Oct. 11, 2012).

**38.** *Compare Galaviz v. Berg,* 763 F.Supp.2d 1170, 1174–75 (N.D.Cal.2011) (ruling that a board-adopted forum selection clause was unenforceable), *with In re Revlon, Inc. S'holders Litig.,* 990 A.2d 940, 960 & n. 8 (Del.Ch.2010) (suggesting that corporations could adopt "charter provisions selecting an exclusive fo-

dated their cases to resolve those common and narrow questions of law: (i) whether the forum selection bylaws are facially invalid under the DGCL (Count I); and (ii) whether the board-adopted forum selection bylaws are facially invalid as a matter of contract law (Count IV). For those reasons, a scheduling order was entered that specifically contemplated motion practice on the statutory and contractual validity issues common to both cases in Counts I and IV.[39]

But the plaintiffs have taken the position that the court cannot consolidate the cases to address purely legal issues, because, as they say, it is improper for this court to make "a determination of the validity of the [b]ylaw[s] in the abstract."[40] The court's power to consolidate cases to address purely legal issues is codified in Delaware Court of Chancery Rule 42(a), which provides that:

> When actions involving a common question of law or fact are pending before the Court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

■ Under that rule, the court may consolidate any cases involving a "common question of law" to decide "any or all the matters." And, here, the order to consoli-

date these actions to address the ripe legal issues—the facial statutory and contractual validity and enforceability of the forum selection bylaws adopted by Chevron's and FedEx's board of directors under the DGCL—rests on that clear authority.[41]

■ Even more surprising still was that the plaintiffs also argued in their brief that the pleadings had not been closed yet, and for that reason alone, the court must stay its hand, and not rule on the purely legal issues presented by their own Counts I and IV.[42] The basis for the plaintiffs' claim was that they had filed a supplemental pleading (which this court had authorized it to do) in response to Chevron's amended bylaw.[43]

But the schedule that the court entered on this consolidated action specifically contemplated that the court would address the counts contesting the facial statutory validity and contractual enforceability of the forum selection bylaws in a consolidated action, and as part and parcel of that decision, permitted the plaintiffs to file supplemental pleadings in the Chevron case that Chevron did not have to answer until this consolidated action was resolved, because the supplement would only raise certain additional counts not related to facial statutory or contractual invalidity.[44] That order was consistent with the court's finding that it would be efficient to resolve the legal questions first, given that it could moot other claims in *both* cases and even

rum for intra-entity disputes," but properly noting that "[t]he issues implicated by an exclusive forum selection provision must await resolution in an appropriate case").

**39.** *See* Order Regarding Limited Coordination & Scheduling (Nov. 19, 2012).

**40.** Pls.' Br. in Opp'n 30 (citation omitted).

**41.** The plaintiffs have also ignored the appropriate procedural mechanism, Court of Chancery Rule 59(f), to reargue the court's October ruling in which it consolidated the cases to address the facial validity claims. Having failed to avail themselves of the appropriate procedural mechanism, the plaintiffs have

waived this procedural argument. *See McDaniel v. DaimlerChrysler Corp.*, 860 A.2d 321, 323 (Del.2004). For that reason alone, the plaintiffs' argument that the court cannot address the consolidated legal issues must fail.

**42.** Pls.' Br. in Opp'n 29–30.

**43.** *See* Order Regarding Limited Coordination & Scheduling (Nov. 19, 2012) ("Plaintiffs shall file their revised Supplement to the Complaint.... The Chevron Defendants will agree that the Revised Supplement shall become part of the Complaint[.]").

**44.** *Id.* (providing a schedule for a motion for judgment on the pleadings and permitting the

the new ones raised by the supplemental pleadings in the Chevron case. By order, a briefing schedule was put in place for the resolution of this motion, which addresses only Counts I and IV of the plaintiffs' complaints, for which the pleadings are closed.[45] These counts allege that the bylaws are statutorily invalid because they are beyond the board's authority under the DGCL, and that board-adopted forum selection bylaws are contractually invalid and therefore not enforceable.[46] The plaintiffs' claims that the boards breached their fiduciary duties in adopting the bylaws have been stayed.[47] The plaintiffs understood this, and their argument in their brief, that this motion addressing their counts relating to purely legal, facial challenges to the forum selection bylaws cannot be considered until their fact-intensive counts are addressed, contradicts the clear order of this court and has no support in the law. If this novel contention were adopted, plaintiffs could cast corporate action in doubt and impair the functioning of a corporation, while not allowing a corporation to clear up the doubt by means of traditional motion practice often used to resolve purely legal questions in a timely manner. Rather, the corporation would not be able to get a ruling on the purely legal challenge of facial validity until the court addressed all the more fact-laden counts in the complaint. Our law does not require that approach. Rather, "[f]acial challenges to the legality of provisions in corporate instruments are regularly resolved by this Court."[48]

### III. *The Standard Of Review*

The standard of review on this motion is important in framing this consolidated motion. The two sides approach this issue differently. The plaintiffs, for their part, simply recite the basic procedural standard, by noting that this court may only grant judgment on the pleadings if there are no material facts in dispute, and one party is entitled to judgment as a matter of law.[49] Thus, the plaintiffs say, "[t]he Court can grant Defendants' [motion] only if unambiguous and unmistakably clear language of the Bylaws renders Defendants' constructions the only reasonable interpretation."[50] The plaintiffs then devote much of their complaints and briefing to arguing that the bylaws are ambiguous, because, they say, the forum selection bylaws could be applied in different ways in different factual situations.[51]

But, the plaintiffs ignore the nature of this motion, and the counts of their own

---

plaintiffs to file supplemental pleadings); *see also* Tr. of Office Conf. (Oct. 31, 2012) (granting the defendants' request to consolidate the cases to address the facial validity of the forum selection bylaws before proceeding with the other claims).

**45.** Order Regarding Limited Coordination & Scheduling (Nov. 19, 2012).

**46.** Chevron Compl. ¶¶ 48–56, FedEx Compl. ¶¶ 49–57 (Count I); Chevron Compl. ¶¶ 73–81, FedEx Compl. ¶¶ 72–80 (Count IV).

**47.** *See* Tr. of Office Conf. 24–26, 44–45 (Oct. 31, 2012).

**48.** *Lions Gate Entm't Corp. v. Image Entm't Inc.*, 2006 WL 1668051, at *6–7 (Del.Ch. June 5, 2006).

**49.** Pls.' Br. in Opp'n 29.

**50.** *Id.* (citing *JANA Master Fund, Ltd. v. CNET Networks, Inc.*, 954 A.2d 335, 338 (Del.Ch. 2008); *United Rentals, Inc. v. RAM Hldgs., Inc.*, 937 A.2d 810, 830 (Del.Ch.2007)).

**51.** *E.g.*, Pls.' Br. in Opp'n 5–24, 32–36; Chevron Compl. ¶¶ 59–67, FedEx Compl. ¶¶ 58–66 (Count II) (the bylaws conflict with Delaware statutes); Chevron Compl. ¶¶ 68–72, FedEx Compl. ¶¶ 67–71 (Count III) (the bylaws improperly grant jurisdiction over all stockholders); Chevron Compl. ¶¶ 82–87, FedEx Compl. ¶¶ 81–86 (Count V) (the bylaws require claims to be brought where the court does not have jurisdiction over all defendants); Chevron Compl. ¶¶ 88–99, FedEx Compl. ¶¶ 87–98 (Count VI) (the bylaws im-

complaints to which the defendants' motion is directed. This motion concerns Count I, in which the plaintiffs alleged that "the bylaw[s are] invalid because [they are] beyond the authority granted in 8 *Del. C.* § 109(b)," and Count IV, in which the plaintiffs claim that "the bylaw[s are] not [ ] valid and enforceable forum selection provision[s]."[52] Thus, this motion is only concerned with the facial statutory and contractual validity of the bylaws, and the motion is expressly not concerned with how the bylaws might be applied in any future, real-world situation. The plaintiffs' proposed standard, by contrast, is based on a case in which this court resolved an actual, live controversy over whether a bylaw could be applied to the real human events underlying that case.[53]

■■■■ The defendants correctly point out this error in the plaintiffs' approach. As our Supreme Court held in the *Frantz Manufacturing* case, "[t]he bylaws of a corporation are presumed to be valid, and the courts will construe the bylaws in a manner consistent with the law rather than strike down the bylaws."[54] Thus, the plaintiffs' burden on this motion challenging the facial statutory and contractual validity of the bylaws is a difficult one: they must show that the bylaws cannot operate lawfully or equitably *under any circumstances.*[55] So, the plaintiffs must

pinge on jurisdiction of federal courts); Chevron Supp. ¶¶ 51–52 (Count IX) (the amended Chevron bylaw impinges on federal jurisdiction).

**52.** Chevron Compl. ¶¶ 48–56, FedEx Compl. ¶¶ 49–57 (Count I); Chevron Compl. ¶¶ 73–81, FedEx Compl. ¶¶ 72–80 (Count IV) (capitalization omitted).

**53.** *See JANA*, 954 A.2d at 344.

**54.** *Frantz*, 501 A.2d at 407 (citation omitted); *see also Hollinger Int'l, Inc. v. Black*, 844 A.2d 1022, 1080–83 (Del.Ch.2004) (distinguishing between the board's legal authority to adopt a bylaw and the board's equitable use of that authority), *aff'd*, 872 A.2d 559 (Del.2005); R. Franklin Balotti & Jesse A. Finkelstein, *The Delaware Law of Corporations & Business Organizations* § 1.10 [hereinafter Balotti & Finkelstein, *Corporations* ] (explaining that courts attempt to interpret "by-laws in harmony" with the corporation's certificate of incorporation and positive law, and thus hold a bylaw to be invalid when a "conflict is unavoidable").

**55.** *Frantz*, 501 A.2d at 407; Edward P. Welch et al., *Folk on the Delaware General Corporation Law* § 109.4 (2009) [hereinafter Welch et al., *Folk on the DGCL* ] ("Bylaws are presumed to be valid. Courts will interpret a bylaw in a manner consistent with the law rather than striking it down. The rules of construction used to interpret statutes, contracts, and other written instruments ap-

ply to bylaws." (citations omitted)). Of course, often, claims about the facial invalidity of a provision come to the courts when a party challenges the legislature's power to enact a statute. Those principles are equally applicable here. *See, e.g., Hibbert v. Hollywood Park, Inc.*, 457 A.2d 339, 342–43 (Del. 1983) (noting that "the rules which are used to interpret *statutes*, contracts, and other written instruments are applicable when construing corporate charters and *bylaws* " (emphasis added)); *Downs v. Jacobs*, 272 A.2d 706, 707 (Del.1970) ("Courts presume every legislative act constitutional and indulge every intendment in favor of validity."); *State v. Hobson*, 83 A.2d 846, 851 (Del.1951) ("Even if the Delaware statute, read literally, were susceptible of the construction which defendant urges, it would be our duty to reject that construction, since we are required, as between two possible constructions, to adopt the one which will uphold its validity."); *see also, e.g., R.M. v. V.H.*, 2006 WL 1389864, at *8 (Del.Fam.Ct. Jan. 19, 2006) ("A party may challenge a statute as unconstitutional on its face or as applied to a particular set of facts. A facial challenge is the most difficult to bring successfully because the challenger must establish that there is no set of circumstances under which the statute would be valid."); *accord United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (describing a facial challenge as the "most difficult" challenge to succeed on because the statute must not operate lawfully in any circumstances).

show that the bylaws do not address proper subject matters of bylaws as defined by the DGCL in 8 *Del. C.* § 109(b), and can never operate consistently with law.[56] The plaintiffs voluntarily assumed this burden by making a facial validity challenge,[57] and cannot satisfy it by pointing to some future hypothetical application of the bylaws that might be impermissible.[58]

The answer to the possibility that a statutorily and contractually valid bylaw may operate inequitably in a particular scenario is for the party facing a concrete situation to challenge the case-specific application of the bylaw, as in the landmark case of *Schnell v. Chris–Craft Industries.*[59] The settled approach of our law regarding bylaws is that courts should endeavor to enforce them to the extent that it is possible to do so without violating anyone's legal or equitable rights.[60]

This is also consistent with the doctrine laid down by the U.S. Supreme Court decision in *Bremen* and its progeny, which requires courts to give as much effect as is possible to forum selection clauses and only deny enforcement of them to the limited extent necessary to avoid some fundamentally inequitable result or a result contrary to positive law.[61] Thus, a plaintiff can challenge the real-world enforcement of a forum selection bylaw. But that review happens when there is a genuine, extant controversy in which the forum selection bylaw is being applied. Under our Supreme Court's precedent in *Stroud* and *Frantz,* which this court must follow, the appropriate question now is simply whether the bylaws are valid under the DGCL, and whether they form facially valid contracts between the stockholders, the directors and officers, and the corporation.[62]

56. *Stroud v. Grace,* 606 A.2d 75, 79 (Del. 1992); *Frantz,* 501 A.2d at 407.

57. Welch et al., *Folk on the DGCL* § 109.3.1 ("The party asserting that bylaws were not properly adopted bears the burden to prove it.").

58. *E.g., Stroud,* 606 A.2d at 79 ("The validity of corporate action under [a bylaw] must await its actual use.").

59. *Schnell v. Chris–Craft Indus., Inc.,* 285 A.2d 437 (Del.1971); *see also Moran v. Household Int'l, Inc.,* 500 A.2d 1346, 1357 (Del. 1985) (concluding that although the board had the power to adopt a poison pill, the "ultimate response" of the board to a takeover must be judged by the "[d]irectors' actions at that time"); *accord Stroud,* 606 A.2d at 96 ("It is not an overstatement to suggest that every valid by-law is always susceptible to potential misuse. Without a showing of abuse ... we must ... uphold the validity of [a bylaw].").

60. Welch et al., *Folk on the DGCL* § 109.4; Balotti & Finkelstein, *Corporations* § 1.10.

61. *The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

62. The *Frantz* and *Stroud* approach is the traditional one. Although it differs from the approach taken by the Supreme Court in the 2008 *CA* case, the Supreme Court in that case cited *Frantz* and *Stroud* approvingly and as good law, stating that the novel posture of the case dictated the different standard of review. *CA, Inc. v. AFSCME Emps. Pension Plan,* 953 A.2d 227, 238 (Del.2008) ("Were this issue being presented in the course of litigation involving the application of the Bylaw to a specific set of facts, we would start with the presumption that the Bylaw is valid and, if possible, construe it in a manner consistent with the law. The factual context in which the Bylaw was challenged would inform our analysis, and we would 'exercise caution [before] invalidating corporate acts based upon hypothetical injuries....' " (citing *Frantz,* 501 A.2d at 407, and quoting *Stroud,* 606 A.2d at 79)). The reason for this different approach may be intuited. In *CA,* the Supreme Court was operating under a novel constitutional amendment that gave it the authority to answer questions posed to it by the Securities and Exchange Commission on a limited paper record, without the full benefit of context that comes from traditional adversarial litigation. *See* 76 Del. Laws ch. 37, § 1 (2007) (amending Del. Const. art. IV, § 11(8)). The Supreme Court may have feared that by giving a

The court turns to these questions now.

## IV. Legal Analysis

### A. The Board–Adopted Forum Selection Bylaws Are Statutorily Valid

Given this procedural context, the court structures its analysis to mirror the two facial claims of invalidity as they have been presented in the complaints. First, the court looks at Count I's challenge that the "bylaw[s are] invalid because [they are] beyond the authority granted in 8 *Del. C.* § 109(b)."[63] As to that claim, the court must determine whether the adoption of the forum selection bylaws was beyond the board's authority in the sense that they do not address a proper subject matter under 8 *Del. C.* § 109(b), which provides that:

> The bylaws may contain any provision, not inconsistent with law or with the certificate of incorporation, relating to the business of the corporation, the conduct of its affairs, and its rights or powers or the rights or powers of its stockholders, directors, officers or employees.

Thus, the court must decide if the bylaws are facially invalid under the DGCL because they do not relate to the business of the corporations, the conduct of their affairs, or the rights of the stockholders.

After first making that determination, the court then addresses Count IV's challenge that "the bylaw[s are] not a valid and enforceable forum selection provision."[64] That is, even if forum selection bylaws regulate proper subject matter under 8 *Del. C.* § 109(b), the plaintiffs allege that forum selection bylaws are contractually invalid because they have been unilaterally adopted by the board.[65]

### 1. The Forum Selection Bylaws Regulate A Proper Subject Matter Under 8 Del. C. § 109(b)

Having challenged whether the bylaws are authorized by 8 *Del. C.* § 109(b), the plaintiffs have to confront the broad subjects that § 109(b) permits bylaws to address. The DGCL provides that bylaws may address any subject, "not inconsistent with law or with the certificate of incorporation, relating to the business of the corporation, the conduct of its affairs, and its rights or powers or the rights or powers of its stockholders, directors, officers or employees."[66] The most important consideration for a court in interpreting a statute is the words the General Assembly used in writing it.[67] As a matter of easy linguistics, the forum selection by-

---

federal regulatory body a flat indication that a bylaw was "valid" or not based on a record consisting of a long letter, it would create the false impression that bylaws of the kind at issue were immune from challenge in all circumstances. Thus, rather than risk such an overbroad implication, the court took a different approach, finding that in that unusual context the variance from the settled standard was the more modest approach. In the more traditional context here of a facial challenge to the validity of a bylaw, the more modest, restrained, and prudent approach is the traditional one under *Frantz* and *Stroud.* That approach involves judicial reticence to chill corporate freedom by condemning as invalid a bylaw that is consistent with the board's statutory and contractual authority, simply because it might be possible to imagine situations when the bylaw might operate unreasonably. By long-standing, settled law, such

as-applied challenges are to be raised later, when real-world circumstances give rise to a genuine, concrete dispute requiring judicial resolution.

63. Chevron Compl. ¶¶ 50–58, FedEx Compl. ¶¶ 49–57.

64. Chevron Compl. ¶¶ 73–81, FedEx Compl. ¶¶ 72–80.

65. Chevron Compl. ¶ 74; FedEx Compl. ¶ 73.

66. 8 *Del. C.* § 109(b).

67. *E.g., New Cingular Wireless PCS v. Sussex Cty. Bd. of Adjustment,* 65 A.3d 607, 611 (Del. 2013) ("It is axiomatic that a statute . . . is to be interpreted according to its plain and ordinary meaning." (citation omitted)); *Scattered Corp. v. Chi. Stock Exch., Inc.,* 671 A.2d 874, 877 (Del.Ch.1994) ("A determination of the

laws address the "rights" of the stockholders, because they regulate where stockholders can exercise their right to bring certain internal affairs claims against the corporation and its directors and officers.[68] They also plainly relate to the conduct of the corporation by channeling internal affairs cases into the courts of the state of incorporation, providing for the opportunity to have internal affairs cases resolved authoritatively by our Supreme Court if any party wishes to take an appeal.[69] That is, because the forum selection bylaws address internal affairs claims, the subject matter of the actions the bylaws govern relates quintessentially to "the corporation's business, the conduct of its affairs, and the rights of its stockholders [*qua* stockholders]."

Perhaps recognizing the weakness of any argument that the forum selection bylaws fall outside the plain language of 8 *Del. C.* § 109(b), the plaintiffs try to argue that judicial gloss put on the language of the statute renders the bylaws facially invalid.[70] The plaintiffs contend that the bylaws do not regulate permissible subject matters under 8 *Del. C.* § 109(b), because

they attempt to regulate an "external" matter, as opposed to, an "internal" matter of corporate governance.[71] The plaintiffs attempt to support this argument with a claim that traditionally there have only been three appropriate subject matters of bylaws: stockholder meetings, the board of directors and its committees, and officerships.[72]

But even if one assumes that judicial statements could limit the plain statutory words in the way the plaintiffs claim (which is dubious), the judicial decisions do not aid the plaintiffs. The plaintiffs take a cramped view of the proper subject matter of bylaws.[73] The bylaws of Delaware corporations have a "procedural, process-oriented nature." [74] It is doubtless true that our courts have said that bylaws typically do not contain substantive mandates, but direct how the corporation, the board, and its stockholders may take certain actions.[75] 8 *Del. C.* § 109(b) has long been understood to allow the corporation to set "self-imposed rules and regulations [that are] deemed expedient for its convenient functioning." [76] The forum selection bylaws here fit this description. They are pro-

---

General Assembly's intent must, where possible, be based on the language of the statute itself. In divining the legislative intent, statutory language, where possible, should be accorded its plain meaning." (citations omitted)).

**68.** *CA, Inc. v. AFSCME Emps. Pension Plan,* 953 A.2d 227, 236–37 (Del.2008).

**69.** *See* Grundfest & Savelle, *Forum Selection Provisions,* at 374.

**70.** *E.g., CA, Inc.,* 953 A.2d at 235 & n. 15 *Hollinger Int'l, Inc. v. Black,* 844 A.2d 1022, 1078–79 & n. 128 (Del.Ch.2004), *aff'd,* 872 A.2d 559 (Del.2005); *Gow v. Consol. Coppermines Corp.,* 165 A. 136, 140 (Del.Ch.1933).

**71.** Pls.' Br. in Opp'n 39–40.

**72.** *Id.* at 44.

**73.** *See, e.g., Hollinger,* 844 A.2d at 1078 ("The DGCL is intentionally designed to provide directors and stockholders with flexible authority [to adopt bylaws], permitting great discretion for private ordering and adaptation. That capacious grant of power is policed in large part by the common law of equity, in the form of fiduciary duty principles."); Balotti & Finkelstein, *Corporations* § 1.10 ("Bylaws that reasonably regulate broader [stockholder] rights may be valid, especially if courts follow the general rule of construction and attempt to harmonize the by-law regulation and the broader right." (citation omitted)).

**74.** *CA, Inc. v. AFSCME Emps. Pension Plan,* 953 A.2d 227, 236–37 (Del.2008).

**75.** *Id.*

**76.** *Gow v. Consol. Coppermines Corp.,* 165 A. 136, 140 (Del.Ch.1933).

cess-oriented, because they regulate *where* stockholders may file suit, not *whether* the stockholder may file suit or the kind of remedy that the stockholder may obtain on behalf of herself or the corporation. The bylaws also clearly address cases of the kind that address "the business of the corporation, the conduct of its affairs, and ... the rights or powers of its stockholders, directors, officers or employees," because they govern where internal affairs cases governed by state corporate law may be heard.[77] These are the kind of claims most central to the relationship between those who manage the corporation and the corporation's stockholders.

By contrast, the bylaws would be regulating external matters if the board adopted a bylaw that purported to bind a plaintiff, even a stockholder plaintiff, who sought to bring a tort claim against the company based on a personal injury she suffered that occurred on the company's premises or a contract claim based on a commercial contract with the corporation. The reason why those kinds of bylaws would be beyond the statutory language of 8 *Del. C.* § 109(b) is obvious: the bylaws would not deal with the rights and powers of the plaintiff-stockholder *as a stockholder*.[78] As noted earlier, the defendants themselves read the forum selection bylaws in a natural way to cover only internal affairs claims brought by stockholders *qua* stockholders.

Nor is it novel for bylaws to regulate how stockholders may exercise their rights as stockholders. For example, an advance notice bylaw "requires stockholders wishing to make nominations or proposals at a corporation's annual meeting to give notice of their intention in advance of so doing." [79] Like such bylaws, which help organize what could otherwise be a chaotic stockholder meeting, the forum selection bylaws are designed to bring order to what the boards of Chevron and FedEx say they perceive to be a chaotic filing of duplicative and inefficient derivative and corporate suits against the directors and the corporations. The similar purpose of the advance notice bylaws and the forum selection bylaws reinforce that forum selection bylaws have a proper relationship to the business of the corporation and the conduct of its affairs under 8 *Del. C.* § 109(b).[80]

---

**77.** 8 *Del. C.* § 109(b).

**78.** *See also* Grundfest & Savelle, *Forum Selection Provisions*, at 369–70 ("[A]s much as contract rights can legitimately be regulated through forum selection provisions, it follows that stockholders' rights to pursue intra-corporate claims can also be regulated by [forum selection] provisions. To be sure, this conclusion would arguably not follow (or not hold as strongly) if the forum selection provision sought to regulate the right to pursue causes of action that were not intra-corporate in nature because then the provision would not be seeking to *regulate the stockholder's rights as a stockholder and would be extended beyond the contract that defines and governs the stockholders' rights.*" (emphasis added)).

**79.** *JANA Master Fund, Ltd. v. CNET Networks, Inc.*, 954 A.2d 335, 344 (Del.Ch.2008) (citation omitted), *aff'd*, 947 A.2d 1120 (Del.2008) (Table).

**80.** The plaintiffs seek to bolster their argument that the forum selection bylaws go beyond the board's statutory authority under 8 *Del. C.* § 109(b) by claiming that the bylaws regulate not only the "rights and powers of [the] stockholders," as is permitted under the statutory text, but also the rights and powers of *former* stockholders. Chevron Compl. ¶ 51; FedEx Compl. ¶ 50. The plaintiffs cite the example of stockholders who are cashed out in a short-form merger, and, having been cashed out, sue the board for a breach of fiduciary duty. As with many of the plaintiffs' challenges to the bylaws, this is properly seen as an as-applied challenge, which should be addressed when the issue is actually ripe. But in any case, the plaintiffs do not cite any rule of statutory construction that justifies reading 8 *Del. C.* § 109(b) in the contorted fashion they propose. The only reason that so-called "former stockholders" can sue under 8 *Del. C.* § 253 is because they were stockholders at the time of the merger. In other words, it is

The plaintiffs' argument, then, reduces to the claim that the bylaws do not speak to a "traditional" subject matter, and should be ruled invalid for that reason alone. For starters, the factual premise of this argument is not convincing. The bylaws cannot fairly be argued to regulate a novel subject matter: the plaintiffs ignore that, in the analogous contexts of LLC agreements and stockholder agreements, the Supreme Court and this court have held that forum selection clauses are valid.[81] But in any case, the Supreme Court long ago rejected the position that board action should be invalidated or enjoined simply because it involves a novel use of statutory authority. In *Moran v. Household International* in 1985, the plaintiff argued that a corporation could not use its powers to issue rights to purchase shares of preferred stock in the form of a shareholder rights plan—a.k.a. poison pill—the sole purpose of which was to allow the board to defend against tender offers addressed solely to stockholders.[82] The Supreme Court rejected the appellants' argument that 8 *Del. C.* § 157 had never been used to authorize the issuance of rights for the purpose of defeating a hostile takeover.[83] Rather, echoing its recent iconic decision in *Unocal,* the court reiterated that "our corporate law is not static. It must grow and develop in response to, indeed in anticipation of, evolving concepts and needs. Merely because the General Corporation Law is silent as to a specific matter does not mean that it is prohibited." [84]

■ Just as the board of Household was permitted to adopt the pill to address a future tender offer that might threaten the corporation's best interests, so too do the boards of Chevron and FedEx have the statutory authority to adopt a bylaw to protect against what they claim is a threat to their corporations and stockholders, the potential for duplicative law suits in multiple jurisdictions over single events. As *Moran* makes clear, that a board's action might involve a new use of plain statutory authority does not make it invalid under our law, and the boards of Delaware corporations have the flexibility to respond to changing dynamics in ways that are authorized by our statutory law. Nor, in addressing this facial challenge, is it possible to conceive that choosing the most obviously reasonable forum—the state of incorporation, Delaware—so that internal affairs cases will be decided in the courts whose Supreme Court has the authoritative final say as to what the governing law means, somehow takes the forum selection bylaws outside of 8 *Del. C.* § 109(b)'s broad authorizing language.[85]

not the case that a bylaw in effect at the time that a stockholder's internal affairs claim arose cannot bind that stockholder simply because the transaction she is challenging resulted in her no longer being a stockholder. That bylaw continues to bind her because her right to sue continues to be based on her status as a stockholder.

81. *Elf Atochem N. Am., Inc. v. Jaffari,* 727 A.2d 286 (Del.1999); *Baker v. Impact Hldg., Inc.,* 2010 WL 1931032 (Del.Ch. May 13, 2010).

82. *Moran v. Household Int'l, Inc.,* 500 A.2d 1346 (Del.1985).

83. *Id.* at 1351.

84. *Id.* (quoting *Unocal Corp. v. Mesa Petroleum Co.,* 493 A.2d 946, 957 (Del.1985)).

85. *See Edgar v. MITE Corp.,* 457 U.S. 624, 645, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982) ("The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders....").

Furthermore, the bylaws here are subject to the same, plus even more, controls on their misuse than the pill found valid in *Moran.* Like a board that has adopted a poison pill in case of some future threat and can redeem it when a tender offer poses no threat, the boards of the companies in this case have reserved the right in the bylaw itself—as is traditional for any party affected by a contractual forum provision—to waive the corporation's rights under the bylaw in a particular circumstance in order to meet their obligation to use their power only for proper corporate purposes.[86] And as with all exercises of fiduciary authority, the real-world application of a forum selection bylaw can be challenged as an inequitable breach of fiduciary duty.[87] But, as a distinguished scholar has noted, "[t]he presumption is not that the [bylaw] is invalid upon adoption because it might, under some undefined and hypothetical set of later-evolving circumstances, be improperly applied." [88]

And forum selection clauses have additional safeguards that poison pills do not have. For starters, unlike typical poison pills, board-adopted forum selection bylaws are subject, as will be discussed more later, to the most direct form of attack by stockholders who do not favor them: stockholders can simply repeal them by a majority vote.[89] In addition, because the corporation must raise the forum selection clause as a jurisdictional defense if it wishes to obtain dismissal of a case filed in a different forum outside of the state selected in the bylaws, the enforceability of the forum selection bylaws will be analyzed under the *Bremen* test in any case where an affected stockholder plaintiff resists compliance, as the court will explain in more depth later.[90] That is, the board must *voluntarily* submit the forum selection clause to the scrutiny of the courts if a plaintiff does not comply with it.

Therefore, the court concludes that forum selection bylaws are statutorily valid under Delaware law, and Count I of the plaintiffs' complaints is dismissed. The court now considers whether a forum selection bylaw is contractually invalid when adopted by the board unilaterally.

## 2. The Board–Adopted Bylaws Are Not Contractually Invalid As Forum Selection Clauses Because They Were Adopted Unilaterally By The Board

Despite the contractual nature of the stockholders' relationship with the corporation under our law, the plaintiffs argue, in Count IV of their complaints, that the forum selection bylaws by their nature are different and cannot be adopted by the board unilaterally. The plaintiffs' argument is grounded in the contention that a board-adopted forum selection bylaw cannot be a *contractual* forum selection clause because

---

86. Both bylaws begin: "Unless the Corporation consents in writing to the selection of an alternative forum...." Chevron Supp. ¶ 1; FedEx Compl. ¶ 20.

87. *Schnell v. Chris–Craft Indus., Inc.,* 285 A.2d 437, 439 (Del.1971).

88. Grundfest & Savelle, *Forum Selection Provisions,* at 331.

89. *See* 8 *Del. C.* § 109(a).

90. *See The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513

(1972); *Ingres Corp. v. CA, Inc.,* 8 A.3d 1143 (Del.2010); *see also* Grundfest & Savelle, *Forum Selection Provisions,* at 378 ("[F]orum selection bylaws are perhaps unique among all bylaws in that they can never be enforced by the corporation unless the corporation triggers prior judicial scrutiny designed to assure that the provision does not violate any legitimate stockholder right. This fact stands in sharp contrast to all other bylaw provisions that allow boards to act without first petitioning for judicial relief.").

the stockholders do not vote in advance of its adoption to approve it.[91] The plaintiffs acknowledge that contractual forum selection clauses are "prima facie valid" under *The Bremen v. Zapata Off–Shore Co.* and *Ingres Corp. v. CA, Inc.,* and that they are presumptively enforceable.[92] But, the plaintiffs say, the forum selection bylaws are contractually invalid in this case, because they were adopted by a board, rather than by Chevron's and FedEx's dispersed stockholders. The plaintiffs argue that this method of adopting a forum selection clause is invalid as a matter of contract law, because it does not require the assent of the stockholders who will be affected by it. Thus, in the plaintiffs' view, there are two types of bylaws: (i) contractually binding bylaws that are adopted by stockholders; (ii) non-contractually binding bylaws that are adopted by boards using their statutory authority conferred by the certificate of incorporation.[93]

■ By this artificial bifurcation, the plaintiffs misapprehend fundamental principles of Delaware corporate law. Our corporate law has long rejected the so-called "vested rights" doctrine.[94] That vested rights view, which the plaintiffs have adopted as their own, "asserts that boards cannot modify bylaws in a manner that arguably diminishes or divests preexisting shareholder rights absent stockholder consent."[95] As then-Vice Chancellor, now Justice, Jacobs explained in the *Kidsco* case, under Delaware law, where a corporation's articles or bylaws "put all on notice that the by-laws may be amended at any time, *no vested rights can arise that would contractually prohibit an amendment.*"[96]

In an unbroken line of decisions dating back several generations, our Supreme Court has made clear that the bylaws constitute a binding part of the contract between a Delaware corporation and its stockholders.[97] Stockholders are on notice

**91.** Pls.' Br. in Opp'n 49–50.

**92.** *Bremen,* 407 U.S. at 10, 92 S.Ct. 1907; *Ingres,* 8 A.3d 1143.

**93.** Although the plaintiffs' argument suggests that a forum selection provision accomplished by a certificate amendment would be more legitimate in some normative sense because stockholders approved the amendment, the plaintiffs ignore that a certificate provision is harder for stockholders to reverse. *See* 8 *Del. C.* § 242(b)(1) (requiring a *board resolution* and stockholder vote for a proper amendment to the corporation's certificate of incorporation). By contrast, in the case of a board-adopted forum selection bylaw, the stockholders can act unilaterally to amend or repeal the provision. *Id.* § 109(a) ("After a corporation other than a nonstock corporation has received any payment for any of its stock, the power to adopt, amend or repeal bylaws shall be in the stockholders entitled to vote."). For present purposes, however, the issue is not whether someone might deem it more legitimate in some sense to proceed by an amendment to the certificate of incorporation rather than by a bylaw. That decision was for the Chevron and FedEx boards in the first in-

stance, and the stockholders have multiple tools to hold the boards accountable if the stockholders disagree with it.

**94.** *See, e.g., Fed. United Corp. v. Havender,* 11 A.2d 331, 335 (Del.1940) (holding that preferred stockholders did not have a "vested" right to accrued dividends).

**95.** Grundfest & Savelle, *Forum Selection Provisions,* at 376.

**96.** *Kidsco Inc. v. Dinsmore,* 674 A.2d 483, 492 (Del.Ch.1995) (emphasis added) (citing *Roven v. Cotter,* 547 A.2d 603, 608 (Del.Ch.1988)); *see also* Willam Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 4176 (updated 2012) ("It is presumed that a person who becomes a shareholder in, or a member of, a corporation does so with knowledge and implied assent that its bylaws may be amended." (citations omitted)).

**97.** *Airgas, Inc. v. Air Prods. & Chems., Inc.,* 8 A.3d 1182, 1188 (Del.2010); *Centaur P'rs, IV v. Nat'l Intergp., Inc.,* 582 A.2d 923, 928 (Del. 1990); *Hibbert v. Hollywood Park, Inc.,* 457 A.2d 339, 342–43 (Del.1983); *Lawson v.*

that, as to those subjects that are subject of regulation by bylaw under 8 *Del. C.* § 109(b), the board itself may act unilaterally to adopt bylaws addressing those subjects.[98] Such a change by the board is not extra-contractual simply because the board acts unilaterally; rather it is the kind of change that the overarching statutory and contractual regime the stockholders buy into explicitly allows the board to make on its own.[99] In other words, the Chevron and FedEx stockholders have assented to a contractual framework established by the DGCL and the certificates of incorporation that explicitly recognizes that stockholders will be bound by bylaws adopted unilaterally by their boards.[100] Under that clear contractual framework, the stockholders assent to not having to assent to board-adopted bylaws.[101] The plaintiffs' argument that stockholders must approve a forum selection bylaw for it to be contractually binding is an interpretation that contradicts the plain terms of the contractual framework chosen by stockholders who buy stock in Chevron and FedEx. Therefore, when stockholders have authorized a board to unilaterally adopt bylaws, it follows that the bylaws are not contractually invalid simply because the board-adopted bylaw lacks the contemporaneous assent of the stockholders.[102] Accordingly, the conclusion reached by the United States District Court for the Northern District of California in *Galaviz v. Berg,* a case on which the plaintiffs rely heavily— that board-adopted bylaws are not like other contracts because they lack the stockholders' assent—rests on a failure to appreciate the contractual framework established by the DGCL for Delaware corporations and their stockholders.[103]

Even so, the statutory regime provides protections for the stockholders, through the indefeasible right of the stockholders to adopt and amend bylaws themselves. "[B]y its terms Section 109(a) vests in the shareholders a power to adopt, amend or repeal bylaws that is legally sacrosanct, *i.e.,* the power cannot be non-consensually eliminated or limited by anyone other than the legislature itself."[104] Thus, even though a board may, as is the case here, be granted authority to adopt bylaws, stockholders can check that authority by repealing board-adopted bylaws. And, of course, because the DGCL gives stockholders an annual opportunity to elect directors,[105] stockholders have a potent tool to discipline boards who refuse to accede

---

*Household Fin. Corp.,* 152 A. 723, 726 (Del. 1930).

**98.** *Kidsco,* 674 A.2d at 492–93.

**99.** Stockholders likewise agree that a requisite majority of other stockholders may adopt bylaws with which they do not agree. A dissenting stockholder can no more object to the authority of a board to adopt a bylaw than it could object to the requisite majority of stockholders adopting a bylaw.

**100.** *Kidsco,* 674 A.2d at 492–93 ("[T]his Court has held that where a corporation's by-laws put all on notice that the by-laws may be amended at any time, no vested rights can arise that would contractually prohibit an amendment."); *see also Roven,* 547 A.2d at 608; *accord Centaur P'rs,* 582 A.2d at 928 ("Corporate charters and by-laws are con-

tracts among the shareholders of a corporation. . . .").

**101.** *CA, Inc. v. AFSCME Emps. Pension Plan,* 953 A.2d 227, 231 (Del.2008) (discussing the power of a board to adopt bylaws without stockholder assent under the contractual framework of the DGCL).

**102.** *Kidsco,* 674 A.2d at 492–93; *see also* 8 *Del. C.* § 109(b).

**103.** 763 F.Supp.2d 1170, 1174 (N.D.Cal. 2011); *see* Grundfest & Savelle, *Forum Selection Provisions,* at 407 ("[I]f the *Galaviz* analysis stands then much of standard corporate law practice regarding the amendment of bylaws must fall, and much larger bodies of corporate law must be rewritten.").

**104.** *CA, Inc.,* 953 A.2d at 232.

**105.** *See* 8 *Del. C.* § 211.

to a stockholder vote repealing a forum selection clause.[106] Thus, a corporation's bylaws are part of an inherently flexible contract between the stockholders and the corporation under which the stockholders have powerful rights they can use to protect themselves if they do not want board-adopted forum selection bylaws to be part of the contract between themselves and the corporation.

And, as noted, precisely because forum selection bylaws are part of a larger contract between the corporation and its stockholders,[107] and because bylaws are interpreted using contractual principles,[108] the bylaws will also be subject to scrutiny under the principles for evaluating contractual forum selection clauses established by the Supreme Court of the United States in *The Bremen v. Zapata Off–Shore Co.*, and adopted by our Supreme Court.[109] In *Bremen*, the Court held that forum selection clauses are valid provided that they are "unaffected by fraud, undue influence, or overweening bargaining power," and that the provisions "should be enforced unless enforcement is shown by the resisting party to be 'unreasonable.'"[110] In *Ingres*, our Supreme Court explicitly adopted this ruling, and held not only that

forum selection clauses are presumptively enforceable, but also that such clauses are subject to as-applied review under *Bremen* in real-world situations to ensure that they are not used "unreasonabl[y] and unjust[ly]."[111] The forum selection bylaws will therefore be construed like any other contractual forum selection clause and are considered presumptively, but not necessarily, situationally enforceable.[112]

In fact, U.S. Supreme Court precedent reinforces the conclusion that forum selection bylaws are, as a facial matter of law, contractually binding. In *Carnival Cruise Lines v. Shute*, the respondent, a cruise ship passenger from Washington State, was injured during the ship's travel between Los Angeles and Mexico.[113] Mrs. Shute tried suing the company in Washington.[114] But the fine print on the ticket contained a forum selection clause designating the courts of Florida as an exclusive forum for disputes.[115] The Supreme Court held that the forum selection provision, although it was not subject to negotiation and was printed on the ticket she received *after* she purchased the passage, was reasonable, and thus enforceable.[116]

Unlike cruise ship passengers, who have no mechanism by which to change their

106. *E.g., MM Cos., Inc. v. Liquid Audio, Inc.*, 813 A.2d 1118, 1127 (Del.2003) ("This Court has repeatedly stated that, if the stockholders are not satisfied with the management or actions of their elected representatives on the board of directors, the power of corporate democracy is available to the stockholders to replace the incumbent directors when they stand for re-election." (citations omitted)).

107. *E.g., Airgas, Inc. v. Air Prods. & Chems., Inc.*, 8 A.3d 1182, 1188 (Del.2010).

108. *E.g., Centaur P'rs, IV v. Nat'l Intergp., Inc.*, 582 A.2d 923, 928 (Del.1990).

109. *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Nat'l Indus. Gp. (Hldg.) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 381–82 (Del.2013) (apply-

ing the *Bremen* test); *Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1146 (Del.2010) (same).

110. *Bremen*, 407 U.S. at 10, 92 S.Ct. 1907 (citations omitted).

111. *Ingres*, 8 A.3d at 1146 (internal quotation marks and citations omitted).

112. *Bremen*, 407 U.S. at 15, 92 S.Ct. 1907.

113. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 588, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

114. *Id.*

115. *Id.* at 587–88, 111 S.Ct. 1522.

116. *Id.* at 594–95, 111 S.Ct. 1522.

tickets' terms and conditions, stockholders retain the right to modify the corporation's bylaws.[117] That plaintiffs did not vote on the bylaws at the time of their adoption is not relevant to the question of whether the bylaws are valid or contractually binding under Delaware law. Like any other by-law, which may be unilaterally adopted by the board and subsequently modified by stockholders, these bylaws are enforced according to their terms. Thus, they will be enforced just like any other forum selection clause.[118]

In sum, stockholders contractually assent to be bound by bylaws that are valid under the DGCL—that is an essential part of the contract agreed to when an investor buys stock in a Delaware corporation. Where, as here, the certificate of incorporation has conferred on the board the power to adopt bylaws, and the board has adopted a bylaw consistent with 8 *Del. C.* § 109(b), the stockholders have assented to that new bylaw being contractually binding. Thus, Count IV of the complaints cannot survive and the bylaws are contractually valid as a facial matter.

B. *The Plaintiffs' Parade Of Horribles Are Not Facial Challenges To The Bylaws And Do Not Make The Bylaws Inconsistent With Law*

The plaintiffs try to show that the forum selection bylaws are inconsistent with law and thus facially invalid by expending much effort on conjuring up hypothetical as-applied challenges in which a literal application of the bylaws might be unreason-

able. For reasons the court has explained, these hypotheticals are not appropriately posed. Rather, if a plaintiff believes that a forum selection clause cannot be equitably enforced in a particular situation, the plaintiff may sue in her preferred forum and respond to the defendant's motion to dismiss for improper venue by arguing that, under *Bremen,* the forum selection clause should not be respected because its application would be unreasonable.[119] The plaintiff may also argue that, under *Schnell,* the forum selection clause should not be enforced because the bylaw was being used for improper purposes inconsistent with the directors' fiduciary duties. The plaintiffs argue that following regular order in this manner puts a potential plaintiff in the predicament of potentially breaching the bylaws and suffering if the court upholds the forum selection clause and dismisses her case, rendering the plaintiff liable for damages. But that predicament is the same as is faced by any party that seeks to bring a case outside the forum designated in an applicable forum selection clause. And if a potential plaintiff does not have confidence in the strength of her argument under *Bremen* that the forum selection clause does not reasonably apply to the case she seeks to bring, she can always choose to file the case in the forum designated in the bylaws.

Review under *Bremen* and its progeny is genuine, not toothless.[120] Indeed, the *Bremen* doctrine exists precisely to ensure

---

**117.** Grundfest & Savelle, *Forum Selection Provisions,* at 407.

**118.** *See Nat'l Indus. Gp. (Hldg.) v. Carlyle Inv. Mgmt. L.L.C.,* 67 A.3d 373, 381–82 (Del.2013).

**119.** *See The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

**120.** *See, e.g., Doe 1 v. AOL, LLC,* 552 F.3d 1077 (9th Cir.2009) (holding that a forum

selection clause was unenforceable, because it barred plaintiffs from bringing a consumer class action under California law); *Cent. Nat'l–Gottesman, Inc. v. M.V. "GERTRUDE OLDENDORFF,"* 204 F.Supp.2d 675 (S.D.N.Y.2002) (holding that a forum selection clause requiring the plaintiff to litigate abroad was unenforceable because the plaintiff would be deprived of statutory remedies). *See generally* 14D Charles Alan Wright et al., *Federal Practice & Procedure* § 3803.1 n.5 (3d

that facially valid forum selection clauses are not used in an unreasonable manner in particular circumstances.[121] Our Supreme Court and this court have in the past applied an analysis similar to *Bremen* to hold that forum selection clauses are situationally unenforceable. For example, in the *TransAmerican Natural Gas* case, Justice Berger, then-Vice Chancellor, declined to issue an injunction to enforce a forum selection clause designating this court as the exclusive forum for a contract dispute, because this court did not, as a matter of positive Delaware law, have subject matter jurisdiction over the controversy.[122] The Supreme Court affirmed, holding that the litigation could proceed in the forum that the plaintiff in the non-Delaware action had chosen, which was a court of general jurisdiction.[123]

But, the plaintiffs seek to undermine *Bremen* by using a facial challenge as a way to get this court to address conjured-up scenarios. Under our law, our courts do not render advisory opinions about hypothetical situations that may not oc-

cur.[124] Rather, as in other contexts, the time for a plaintiff to make an as-applied challenge to the forum selection clauses is when the plaintiff wishes to, and does, file a lawsuit outside the chosen forum. At that time, a court will have a concrete factual situation against which to apply the *Bremen* test, or analyze, à la *Schnell*,[125] whether the directors' use of the bylaws is a breach of fiduciary duty.

The absence of any principled basis to complete the law school hypotheticals posed by the plaintiffs is also made clear by the reality that the plaintiffs concede, as they must, that in the main, the forum selection bylaws will work without any problem.[126] As noted earlier, in their opening brief, the defendants outlined the types of claims that the forum selection bylaws cover.[127] Consistent with the plain language of the bylaws and the plaintiffs' own description of the covered claims in their complaints,[128] the defendants' brief makes clear that the forum selection bylaws are addressed solely to internal affairs claims governed by state corporate

ed. updated 2013) (collecting federal cases where forum selection clauses were not enforced).

121. *Bremen*, 407 U.S. at 17–18, 92 S.Ct. 1907.

122. *El Paso Natural Gas Co. v. TransAm. Natural Gas Corp.*, 1994 WL 248195 (Del.Ch. May 31, 1994).

123. *El Paso Natural Gas Co. v. TransAm. Natural Gas Corp.*, 669 A.2d 36 (Del.1995). For other cases in which the courts of this state have declined to enforce forum selection clauses, see *Aveta, Inc. v. Colon*, 942 A.2d 603, 607 n. 7 (Del.Ch.2008), in which the Court of Chancery held that a forum selection clause was unenforceable, applying a standard "probably tantamount to the federal [*Bremen*] standard"; and *Brandywine Balloons, Inc. v. Custom Computer Service, Inc.*, 1989 WL 63968, at *4 (Del.Super.Ct. June 13, 1989), in which the Superior Court denied a motion to dismiss a suit under a forum selection clause, on the ground that enforcing the clause "would seriously impair the plaintiff's ability to pursue his cause of action" (citation and internal quotation marks omitted).

124. *See, e.g., Paramount Commc'ns Inc. v. QVC Network Inc.*, 637 A.2d 34, 51 (Del.1993) ("It is the nature of the judicial process that we decide only the case before us...."); *Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 479 (Del.1989) ("[T]his Court's jurisdiction ... does not require us to entertain suits seeking an advisory opinion or an adjudication of hypothetical questions...." (citation and internal quotation marks omitted)); *see also Opinion of the Justices*, 314 A.2d 419 (Del.1973) (declining to issue an advisory opinion on the ground that such an opinion was not authorized under 10 *Del. C.* § 141).

125. *Schnell v. Chris–Craft Indus., Inc.*, 285 A.2d 437 (Del.1971).

126. Tr. of Oral Arg. 64:13–65:6.

127. Defs.' Opening Br. 30–31.

128. Chevron Supp. ¶¶ 1, 28–31; FedEx Compl. ¶¶ 20–22; *see also* Pls.' Br. in Opp'n 4–5.

law. In other words, the forum selection bylaws only regulate *where* a certain set of claims, relating to the internal affairs of the corporation and governed by the law of the state of incorporation, may be brought, not *what* claims.[129]

In other words, the plaintiffs cannot even reasonably contend that the bylaws are intended to do more than address where claims clearly involving the internal affairs of the corporation and thus governed by the law of the state of incorporation must be brought. And the plaintiffs fail to make any reasoned argument that the forum selection bylaws cannot operate sensibly as to the bulk of typical internal affairs cases, where the traditional defendants are the directors and top officers of the corporations, subject to jurisdiction under 10 *Del. C.* § 3114.[130]

Perhaps recognizing this weakness in their position, the plaintiffs conjure up situations where there might be a stray defendant or two who is not subject to personal jurisdiction in the state of incorporation, but may be susceptible to service elsewhere.[131] In that situation, they say, the bylaws might not operate reasonably. But, of course, the plaintiffs ignore

the reality that the bylaws might operate reasonably even then. For example, there may be no forum *anywhere* in which all possible defendants would be subject to personal jurisdiction. Nor is it apparent that it would be unreasonable to require a plaintiff to bring an internal affairs claim in the courts of the state of incorporation against the numerous corporate defendants who will be indisputably subject to the state's personal jurisdiction, simply because a few other defendants have to be sued elsewhere. And in the case of the most common type of litigation where filing of internal affairs claims in corporate litigation occurs—those involving challenges to proposed mergers—the plaintiffs ignore the multiple tools that exist to allow the courts of the state of incorporation to hold parties accountable to stockholders claiming that their rights were violated. This includes the broad reach of 10 *Del. C.* § 3114, which now covers not only all directors, but, as mentioned, also key officers,[132] and other jurisdictional doctrines that usually make it possible for a plaintiff to hale all the key defendants before this state's courts.[133] Not only that, the plaintiffs ignore that corporations such as Chevron

**129.** *See* Grundfest & Savelle, *Forum Selection Provisions*, at 370 ("[Forum selection] provisions do not purport to regulate a stockholder's ability to bring a securities fraud claim or any other claim that is not an intra-corporate matter, and the dominant forms of [forum selection] provisions are drafted expressly to preclude such applications."); *id.* at 373 ("Because the substantive resolution of these intra-corporate disputes are, pursuant to the internal affairs doctrine, governed by the laws of the chartering state, [forum selection] provisions cannot at all influence the substantive law governing the resolution of the underlying disputes.").

**130.** 10 *Del. C.* § 3114(a)-(b) (providing that nonresident directors and top officers of Delaware corporations consent to the appointment of the corporation's agent or the Secretary of State to receive service of process).

**131.** Chevron Compl. ¶¶ 82–87, FedEx Compl. ¶¶ 81–86 (Count V).

**132.** *See* 74 Del. Laws ch. 83, § 3 (2003) (codified at 10 *Del. C.* § 3114(b)).

**133.** These doctrines include the aiding and abetting and conspiracy theories used in conjunction with the long-arm statute, 10 *Del. C.* § 3104. *See, e.g., Matthew v. Fläkt Woods Gp. SA*, 56 A.3d 1023, 1027–28 (Del.2012) (applying the conspiracy theory of jurisdiction in conjunction with 10 *Del. C.* § 3104); *Hercules Inc. v. Leu Trust & Banking (Bahs.) Ltd.*, 611 A.2d 476, 481–82 (Del.1992) (same); *In re Am. Int'l Gp., Inc.*, 965 A.2d 763, 814 (Del.Ch. 2009) ("The conspiracy theory of jurisdiction has often been used by plaintiffs in concert with … 10 *Del. C.* § 3104."); *see also HMG/Courtland Props., Inc. v. Gray*, 729 A.2d

and FedEx that have adopted forum selection bylaws will have an incentive to encourage officers, employees and affiliates not covered by § 3114 to consent to jurisdiction in the forum identified by the bylaws, and can accomplish that easily by conditioning the provision of advancement and indemnification on assent to jurisdiction in Delaware over the types of claims covered by the bylaws, or by including consent-to-jurisdiction provisions in employment agreements.

Similarly, the plaintiffs' attempts to show that there might be situations when the forum selection bylaws would not operate reasonably because they could somehow preclude a plaintiff from bringing a claim that must be brought exclusively in a federal court also is inappropriate and unconvincing as a way to show that the forum selection bylaws are facially invalid. For one thing, these arguments do not even pertain to the Chevron bylaw, which was amended to allow a filing in the feder-

al courts of the state of incorporation. For another thing, it bears repeating that in the main, and as the plaintiffs themselves concede,[134] the kind of cases in which claims covered by the forum selection clause predominate are already overwhelmingly likely to be resolved by a state, not federal, court. And as with the issue of personal jurisdiction, the plaintiffs ignore a number of factors that suggest that their hypothetical concern that the forum selection clause will operate unreasonably is overstated. For example, it is common for derivative actions to be filed in state court on behalf of corporations coincident to the filing of federal securities claims exclusively within the jurisdiction of the federal courts.[135] And with good reason. The corporation is usually a defendant in the federal action. Any stockholder seeking to bring a derivative suit on behalf of the corporation has to act in the best interest of the corporation and cannot therefore sue it for damages simultaneously.[136] In these situations, the derivative

---

300, 308 (Del.Ch.1999) (noting that the agency, alter ego, and conspiracy theories can be used in conjunction with 10 *Del. C.* § 3104 "to advance Delaware's interest in holding aiders and abettors accountable"). Many other potential defendants, such as merger partners, investment banks, and law firms, are often either domiciled in Delaware or have sufficient contacts with the state to be susceptible to personal jurisdiction. *See, e.g., Sample v. Morgan,* 935 A.2d 1046, 1063–65 (Del. Ch.2007) (finding that Delaware had jurisdiction over a law firm that prepared an amendment to a Delaware corporation's certificate that was the subject of the lawsuit); *Derdiger v. Tallman,* 773 A.2d 1005 (Del.Ch.2000) (suit against target board for breach of fiduciary duty, and acquiring corporation for aiding and abetting breach of fiduciary duty); Final Order & J., *In re El Paso Corp. S'holders Litig.,* C.A. No. 6949–CS (Del.Ch. Dec. 3, 2012) (settlement of law suit against target company board for breach of fiduciary duty, and financial advisor for aiding and abetting breach of duty, in which the financial advisor contributed to the settlement payment); Final Order & J., *In re Del Monte Foods Co. S'hold-*

*ers Litig.,* C.A. No. 6027–VCL (Del. Ch. Dec. 1, 2011) (same).

**134.** Tr. of Oral Arg. 64:8–65:6.

**135.** *See, e.g., In re Groupon Deriv. Litig.,* 882 F.Supp.2d 1043 (N.D.Ill.2012) (staying a derivative suit pending the resolution of a motion to dismiss a related securities suit); *Bach v. Amedisys, Inc.,* 2010 WL 4318755 (M.D.La. Oct. 22, 2010) (describing four securities class actions and four derivative suits that arose out of the same facts); *Cucci v. Edwards,* 2007 WL 3396234 (C.D.Cal. Oct. 31, 2007) (staying derivative action during prosecution of securities class action); *Brenner v. Albrecht,* 2012 WL 252286 (Del.Ch. Jan. 27, 2012) (same); *Brudno v. Wise,* 2003 WL 1874750 (Del.Ch. Apr. 1, 2003) (same).

**136.** *See, e.g., Ruggiero v. Am. Bioculture, Inc.,* 56 F.R.D. 93, 95 (S.D.N.Y.1972) ("[I]t is difficult to see how the ... plaintiffs can reconcile their existing duties to [the company] and its present shareholders as derivative plaintiffs with the duties which they seek to assume on behalf of a class which attacks [the compa-

suits typically seek recompense from the directors on behalf of the corporation for any harm the corporation may suffer if it has to pay damages or incur other loss because the directors caused the corporation to breach the securities laws.[137] It is not at all evident that in these situations, the application of the bylaws would operate unreasonably. Indeed, the strength of *Bremen* and situational fiduciary duty review is that any such argument is presented in an actual case with concrete facts.

On their face, neither of the forum selection bylaws purports in any way to foreclose a plaintiff from exercising any statutory right of action created by the federal government. Rather, the forum selection bylaws plainly focus on claims governed by the internal affairs doctrine and thus the law of the state of incorporation. In the event that a plaintiff seeking to bring a claim within the exclusive jurisdiction of the federal courts is met with a motion to dismiss because of the forum selection clause, the plaintiff will have the most hospitable forum possible to address the motion by pressing an argument that the bylaw cannot operate to foreclose her suit—a federal court. For example, if a claim under SEC Rule 14a–9 was brought against FedEx and its board of directors in federal court and the defendants moved to dismiss because of the forum selection clause, they would have trouble for two reasons.[138] First, a claim by a stockholder under federal law for falsely soliciting proxies does not fit within any category of claim enumerated in FedEx's forum selection bylaw. Thus, FedEx's bylaw is consistent with what has been written about similar forum selection clauses addressing internal affairs cases: "[Forum selection] provisions do not purport to regulate a stockholder's ability to bring a securities fraud claim or any other claim that is not an intra-corporate matter."[139] Second, the plaintiff could argue that if the board took the position that the bylaw waived the stockholder's rights under the Securities Exchange Act, such a waiver would be inconsistent with the antiwaiver provisions of that Act, codified at 15 U.S.C. § 78cc.[140] But, the court declines to wade deeper into imagined situations involving multiple "ifs" because rulings on these situationally specific kind of issues should occur *if and when* the need for rulings is actually necessary.[141]

As a distinguished scholar has pointed out, there likely are pragmatic solutions to the imagined scenarios that the plaintiffs cite, which would both respect the forum selection bylaws' requirement that state law internal affairs claims be adjudicated

ny]."); *see also* Fed. R. Civ. Pro. 23.1(a) ("The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association.").

137. *E.g., Brenner*, 2012 WL 252286; *Brudno*, 2003 WL 1874750.

138. 17 C.F.R. § 240.14a–9.

139. Grundfest & Savelle, *Forum Selection Provisions*, at 370.

140. *See* 15 U.S.C. § 78cc(a) (corresponding to Securities Exchange Act of 1934, ch. 404,

§ 29(a), 48 Stat. 881, 903) ("Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of a self-regulatory organization, shall be void."); *see also* 15 U.S.C. § 77n (codifying Securities Act of 1933, ch. 38, § 14, 48 Stat. 74, 84) (antiwaiver provision of the Securities Act of 1933); 15 U.S.C. § 80a–46(a) (codifying Investment Company Act of 1940, ch. 686, § 47, 54 Stat. 789, 845) (antiwaiver provision of the Investment Company Act of 1940).

141. *See Moran v. Household Int'l, Inc.*, 500 A.2d 1346, 1357 (Del.1985) (stating that corporate action "must be evaluated when and if the issue arises").

in the courts of the state of incorporation, while preserving any substantive claims that must be brought in federal court.[142] But, for present purposes, the key is that forum selection bylaws, like other forum selection clauses, are not facially invalid because they might operate in a problematic way in some future situation. The situational review *Bremen* requires, and the analogous protections of fiduciary duty review under cases like *Schnell*, exist to deal with real-world concerns when they arise in real-world and extant disputes, rather than hypothetical and imagined future ones.

The wisdom of declining to opine on hypothetical situations that might or might not come to pass is evident. The waiver provision in the bylaws also counsels against the need to do that, as by that tool, the board, as the statutory instrumentality charged with advancing the corporation's best interests, is empowered to permit a plaintiff with a claim within the exclusive jurisdiction of a federal court, but which arguably falls within the reach of the bylaw's language, to proceed. And, the prospective plaintiff may also ask the board to waive the bylaw in a particular circumstance, and if the prospective plaintiff believes that the board's refusal to waive amounts to a breach of fiduciary duty, the plaintiff may sue for an injunction seeking the board to be required to waive the bylaw's application. But, under Delaware law, the presumption is not that the Chevron and FedEx directors will not use their waiver authority in good faith and for the best interests of the corporations and their stockholders; it is that they will.[143] In view of that reality, and the fact that Chevron's and FedEx's stated reasons for the bylaws have nothing to do with foreclosing anyone from exercising any substantive federal rights, but only with channeling internal affairs cases governed by state law to the state of incorporation's courts, there is no basis on a facial challenge to assume that the bylaws can never operate reasonably.[144]

But the main point remains the mundane but important one. As with other forum selection clauses, *Bremen* provides protection in the event that a plaintiff believes that the clause is operating in a situationally unreasonable or unlawful manner.[145] And as with the case of bylaws generally, the board's use of its powers under the bylaw is subject to challenge as inconsistent with its fiduciary duties in the event of an actual dispute.[146]

### V. *Conclusion*

For these reasons, the court finds that the challenged bylaws are statutorily valid under 8 *Del. C.* § 109(b), and are contractually valid and enforceable as forum selection clauses. Judgment is entered for the defendants dismissing Counts I and IV of the plaintiffs' complaints against Chevron and FedEx, with prejudice. IT IS SO ORDERED.

142.  John Coffee, *Forum Selection Clauses and the Market for Settlements*, N.Y. L.J., May 17, 2012, at 4.

143.  *See Aronson v. Lewis*, 473 A.2d 805, 812 (Del.1984) (citations omitted).

144.  *See* Grundfest & Savelle, *Forum Selection Provisions*, at 363–67 (discussing facial challenges to forum selection provisions).

145.  *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15–17, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

146.  *Stroud v. Grace*, 606 A.2d 75, 79, 96 (Del. 1992).